## A98A0859. HOLLIS v. THE STATE.
(505 SE2d 837)

ANDREWS, Chief Judge.

Lewis Michael Hollis appeals from the judgment entered on a jury verdict finding him guilty of driving while an habitual violator, fleeing and attempting to elude, obstruction of an officer, driving under the influence of alcohol, improper tag, running a stop sign, and reckless driving. On appeal, Hollis argues the evidence was insufficient to prove he was driving while an habitual violator and driving while under the influence of alcohol. He also argues that the trial court improperly admitted evidence of his refusal to submit to chemical testing of his blood and urine.

The evidence at trial, taken in the light most favorable to the jury's verdict, *Gazaway v. State*, 207 Ga. App. 641, 642 (428 SE2d 659) (1993), was that on October 15, 1995, Hollis was observed running a stop sign by Jackson County Sheriff's Deputy Michael Boyle. Boyle turned his vehicle around and began pursuit of Hollis' blue Plymouth Duster. Hollis refused to pull over, and Boyle called for assistance. Upon activation of the blue lights, an in-car video camera was activated in the police car, and it recorded a 12-minute chase during which Hollis was observed weaving across the road and running another stop sign. Deputy Boyle called in the license tag and learned it was assigned to a different vehicle. Other officers joined the pursuit, and a rolling roadblock was established to stop Hollis.

Upon stopping the vehicle, the officers ordered Hollis out of the Duster. When he refused, he was forcefully removed. Pepper spray and batons were used on Hollis who continued to struggle and fight

the officers throughout the arrest. In the course of this struggle, Deputy Boyle received cuts, scrapes, and a twisted knee that later required surgery, as well as being accidentally sprayed with pepper spray. After being placed in the back of another officer's car and taken to jail, Hollis was washed to remove the pepper spray. After he was read the Implied Consent Notice, Hollis refused to submit to blood or urine testing. Further investigation revealed Hollis had been declared an habitual violator.

1. On appeal, Hollis argues that it was a legal impossibility for him to be convicted for driving after being declared an habitual violator, relying on *Wilson v. Miles*, 218 Ga. App. 806 (463 SE2d 381) (1995) and that admission of State's Exhibit 3 and denial of his motion for directed verdict on this ground were error. In *Wilson*, this Court determined that under OCGA § 40-5-58, three separate and unrelated transactions are required for designation as an habitual violator.

State's Exhibit 3 is the Official Notice Of Revocation of February 3, 1992, which declares Hollis an Habitual Violator. It reflects that the declaration arose out of only two arrest incidents, but three convictions, and Hollis objected to it based on *Wilson*, supra.

*Wilson*, however, was an appeal from the superior court's affirmance of the Department of Public Safety's declaration of Wilson as an habitual violator, the appropriate procedure for contesting the declaration and a process of which Hollis did not avail himself. *Smith v. State*, 248 Ga. 828, 831 (3) (286 SE2d 709) (1982); *Hardison v. Shepard*, 246 Ga. 196, 198 (2) (269 SE2d 458) (1980).

This Court has repeatedly held that the essence of the offense is driving after being notified that one may not do so because, by doing so, one is " ' "(flouting) the law even if one or more of the underlying convictions is voidable [or void]. . . ." (Cit.)' [Cit.]" *Youmans v. State*, 207 Ga. App. 373, 374 (427 SE2d 848) (1993). The State is required to prove only that the accused was declared an habitual violator and operated a vehicle without having obtained a valid driver's license. *State v. Oliver*, 202 Ga. App. 613, 614 (415 SE2d 54) (1992); *State v. Tart*, 183 Ga. App. 737, 738 (359 SE2d 722) (1987); *State v. Bell*, 182 Ga. App. 860 (357 SE2d 596) (1987).

There was no error in admitting State's Exhibit 3 or denying the motion for directed verdict on this ground.

2. Hollis next contends that the evidence was insufficient to convict him of driving under the influence of alcohol, correctly pointing out that in order to be convicted of driving under the influence of alcohol, some evidence that the accused was under the influence *of alcohol* must be proffered.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the [defendant]

no longer enjoys the presumption of innocence; moreover[,] an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) [(1991)]; *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) [(1994)]." *Dolphus v. State*, 218 Ga. App. 565, 566 (462 SE2d 453) (1995). In the instant case, there is no evidence of impairment due to alcohol. While circumstantial evidence has been sufficient to convict defendants of driving under the influence of alcohol, in such cases, the circumstances included demeanor evidence from the arresting officer of the defendant's behavior and appearance. Such factors as odor of alcohol, bloodshot eyes, and unsteadiness on the feet were used to convict. See *Jones v. State*, 187 Ga. App. 132 (369 SE2d 509) (1988); *Blackwell v. State*, 180 Ga. App. 253 (349 SE2d 13) (1986). In this case, while evidence of unsafe driving existed, the transcript is devoid of any evidence of alcohol indicia. When driving under the influence of alcohol is alleged, the presence of alcohol must be proven by the State. For this reason, the evidence was insufficient to convict the defendant of driving under the influence of alcohol, and that conviction is reversed.

Therefore, it is irrelevant that evidence of the defendant's refusal to take the blood test was admitted. We note for the record that the refusal was properly admitted for the following reasons. Hollis contends evidence of his refusal of the test was improperly admitted at trial because he was not read the implied consent warning in a timely manner.

In *Perano v. State*, 250 Ga. 704 (300 SE2d 668) (1983), the Supreme Court held that failure to read the independent test rights in a timely manner renders the results of chemical testing inadmissible, and Hollis argues the officer was not unable to read the implied consent warnings at the scene, since he was able to drive the defendant to the jail. In *Perano*, the court allowed the reading of implied consent warnings at the hospital, instead of the scene of arrest because the defendant's wife was continuing to cause commotion at the scene. The court preferred Perano to be able to make an intelligent and informed decision about his rights and felt the hospital was a more appropriate place for him to do so. Id. at 704.

Additionally, this Court has held that "notification is timely if given 'at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant.'" *Mason v. State*, 177 Ga. App. 184 (338 SE2d 706) (1985). Here, Hollis and both deputies had been sprayed with pepper spray. The officers attributed their delay in reading implied consent warnings to concern about washing the pepper spray from both themselves and Hollis. Pepper

spray is an extreme irritant used as a nonlethal method of disabling resistant suspects, and Deputy Boyle testified as to the unpleasant effects of pepper spray at trial. In addition to making the reading of implied consent warnings difficult for the deputies, it undoubtedly would have distracted Hollis from fully considering his rights.

Deputy Boyle explained that proper police procedure for a suspect that has been sprayed is to get him to the station and wash the irritant off his face and body. Hollis argues that, based on the deputies' own testimony, the pepper spray seemed to have no effect on him and there could not have been any concern about removing it from him. Hollis, however, testified "they say [the pepper spray] didn't have no effect, but it — it affected me for a long time after that." The deputies' actions in first taking Hollis to the station and washing him off before reading him implied consent warnings was as close in time to the arrest as practicable, and therefore justified. Evidence of Hollis' subsequent refusal to take the test was properly admitted.

For the above-stated reasons, the conviction for driving while under the influence of alcohol is reversed. The conviction for driving while an habitual violator is affirmed as are the convictions for obstructing an officer, fleeing and attempting to elude, improper tag, reckless driving, and running a stop sign which were not contested.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 25, 1998 —
RECONSIDERATION DENIED SEPTEMBER 9, 1998 — 

*Donna L. Avans*, for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.