## A02A2060. PREACHER v. THE STATE.
### (573 SE2d 498)

PHIPPS, Judge.

A jury found James Edward Preacher guilty of disorderly conduct and interference with government property but acquitted him of obstruction and criminal trespass. After the denial of his motion for new trial, Preacher filed this appeal in which he contests the sufficiency of the evidence and the trial court's recharge. After review, we find no merit to either claim and affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict and Preacher no longer enjoys the presumption of innocence.[1] So considered, the evidence established that at mid-day on May 18, 2000, Deputy Tim Holland was dispatched to Georgia Highway 80 where a disabled 18-wheeler flatbed partially obstructed a westbound lane. Preacher's brother, Gerald Preacher, had just had a single-vehicle accident in the tractor-trailer. There were no injuries, but there was some property damage and part of the rear corner of the truck's trailer straddled a portion of one lane of the highway.

As the responding officer, Holland positioned his patrol car adjacent to the highway with its emergency lights flashing and began

---

[1] *Patterson v. State*, 244 Ga. App. 222-223 (535 SE2d 269) (2000).

directing traffic, so that vehicles could safely proceed around the protruding trailer. Holland testified that "tractor trailers had a hard time" making it through. After Holland had been directing traffic for about 20 minutes, James Preacher, the driver's identical twin, arrived.

Trouble arose after Preacher approached Holland and began cursing. Holland testified that "[w]hile I was still directing traffic, he came up and approached me in the roadway and he asked, have you got a wrecker for this truck yet?" Holland explained that he had not been given the name of a towing company. Before walking off, Preacher retorted, "it's been 15 fucking minutes and you ain't done a damn thing." Holland testified that he ignored the comment and "just continued to work the traffic." Preacher, however, "kept coming back and forth into the roadway." Holland testified that despite repeatedly telling Preacher to step back to his vehicle, he did not comply. Instead, Preacher remained in the road, diverting Holland's attention from his traffic duties. In his incident report, entered in evidence as a defense exhibit, Holland described Preacher as "being belligerent" with him. Twice Preacher called Holland "a sorry son of a bitch." Holland felt menaced by "the expression on his face, gritting of the teeth, . . . the veins and everything popping out, you know, . . . he was excited." After Preacher refused to leave and then disregarded Holland's instruction to put his hands on the trailer, a minor tussle ensued with both men tumbling into a ditch. Holland then arrested Preacher and placed him inside his patrol car.

Afterward, Holland, still the only law enforcement officer at the scene, resumed directing traffic. Shortly thereafter, when Holland went to check on Preacher, he heard Preacher call him "a no good prick" and noticed that an inside door handle had been broken off. Holland testified that Preacher called him "an ignorant prick," and a "sorry bastard." Some of the conversation was captured by Holland's micro-cassette recorder. The jury heard the audiotape.

Before trial, Preacher unsuccessfully challenged the legality of his arrest. At trial, Preacher again argued that since his arrest had not been lawful, he was justified in resisting Holland, the arresting officer.

1. Preacher asserts that the evidence does not support the verdict. We disagree. The evidence established that Preacher cursed at a law enforcement officer, appeared belligerent, and refused to obey the officer's instructions during the time the officer was performing traffic control duties. While at an accident scene and in a public place, apparently without provocation, Preacher had directed abusive or opprobrious words toward that same officer. Then, after his arrest, Preacher interfered with government property by breaking off an interior door handle on a police cruiser belonging to the Effing-

ham County Sheriff's Department. Having viewed the evidence in the light most favorable to the verdict, we find this evidence sufficient to sustain the convictions for disorderly conduct and interfering with government property.[2]

Preacher also argues that his acquittal on the obstruction charge mandated his acquittal on the other two charges. However, an acquittal on the offense for which an arrest is made does not negate the legality of an otherwise lawful arrest.[3] This is so because there is a great difference between what is required to prove guilt in a criminal case and what is needed to show probable cause for an arrest.[4] Therefore, the acquittal on the obstruction charge had no bearing on the legality of the arrest.[5]

Finally, citing *Woodward v. Gray*,[6] Preacher contends that his arrest was illegal because he was arrested without probable cause. He further claims that the disorderly conduct and interference with government property took place after an illegal arrest, and so, those convictions cannot stand.[7] While admitting that he called Holland "a sorry son of a bitch" and "a sorry bastard" and broke off the door handle, Preacher contends that he uttered the remarks and broke the handle only after being arrested illegally and placed inside a hot patrol cruiser. Holland, however, testified otherwise. Holland testified that some of the name calling occurred before the arrest, and he attested that the patrol car's air conditioning was operating continuously while Preacher was inside. Conflicts in witness testimony, as here, merely create questions of credibility for the jury to resolve.[8]

2. Preacher contends that the trial court erred in instructing the jury that a verdict of not guilty on Count 1 of the indictment did not affect the jury's decision on the other counts. Preacher argues that by failing "to explain the relationship between the counts of the instant indictment and the concepts of justification and the right to resist an unlawful arrest" the trial court committed reversible error.

The verdict form afforded the jury the options of choosing to convict Preacher of misdemeanor obstruction (Count 1-A) or felony obstruction (Count 1-B) or neither. During deliberations, the jury asked, "in reference to Count 1-A [misdemeanor obstruction], could you please define knowingly and willfully[?]" The jury posed two additional questions to the trial court: "[a]lso, how does the verdict on

---

[2] See *Tucker v. State*, 233 Ga. App. 314, 317 (2) (504 SE2d 250) (1998).

[3] See *Brooks v. State*, 166 Ga. App. 704, 706 (305 SE2d 436) (1983).

[4] See id.

[5] See *Campbell v. State*, 221 Ga. App. 105, 107 (2) (470 SE2d 503) (1996).

[6] 241 Ga. App. 847, 849 (a) (527 SE2d 595) (2000), cert. granted, Case No. S00G0825 (2000).

[7] See *Scott v. State*, 123 Ga. App. 675, 676-677 (182 SE2d 183) (1971).

[8] *Jackson v. State*, 236 Ga. App. 260, 261 (511 SE2d 615) (1999).

Count 1-A affect the other counts? Are they independent[?]"[9] In responding to the latter inquiry, the court charged, "[t]he other counts are independent from 1-A. So you can go ahead and make a decision on the remaining counts independent of 1-A."

Because the inconsistent verdict rule has long been abolished in criminal cases,[10] "a defendant cannot attack as inconsistent a jury verdict of guilty on one count and not guilty on a different count."[11] Although Preacher claims that his acquittal on the obstruction charge combined with his defense of illegal arrest necessitated his acquittal on the remaining counts, we do not agree. As explained in Division 1, Preacher's acquittal on the obstruction count did not render his arrest illegal. No error has been shown.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 1, 2002.

*Ronald K. Thompson*, for appellant.
*R. Joseph Martin III, District Attorney, Tony A. May, Assistant District Attorney*, for appellee.

---

[9] Count 2 charged Preacher with interference with government property, Count 3 with disorderly conduct, and Count 4 with criminal trespass.

[10] *Givens v. State*, 273 Ga. 818, 820 (1) (546 SE2d 509) (2001).

[11] *Dumas v. State*, 266 Ga. 797, 799 (2) (471 SE2d 508) (1996).