A05A0741. BROWN v. THE STATE.
(617 SE2d 227)

PHIPPS, Judge.

Willie James Brown appeals his convictions of two counts of violating the Georgia Controlled Substances Act by selling cocaine on November 14 and December 5, 2002. He challenges the sufficiency of the evidence, certain evidentiary rulings, and the determination that he was not deprived of effective assistance of counsel. Because Brown has shown no reversible error, we affirm.

1. Brown contends that the evidence was insufficient to support his convictions.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[1]

Viewed in this light, the evidence showed that Daniel McDonald, then working as a law enforcement agent for a drug task force, launched an investigation based on information from a confidential informant (CI) that Brown was engaged in drug activity. The CI agreed to aid McDonald by participating in controlled buys of cocaine from Brown on November 14 and December 5, 2002. The CI testified that on each of those dates, he gave Brown $200 in exchange for cocaine. The substance he purchased from Brown on those dates was later confirmed to be cocaine. The record also shows that, during the

---

[1] *Brown v. State*, 237 Ga. App. 322 (1) (514 SE2d 236) (1999).

drug sales, the CI was wearing a concealed audio recording device. And two audiotapes depicting Brown involved in drug sales were played for the jury.

Brown argues that the CI utilized by the state weakened its case, citing evidence that the CI was a drug user, that McDonald had caught the CI growing marijuana at home, that McDonald had offered not to press charges against the CI if he agreed to work with him on drug cases, and that the CI admitted at trial that he was testifying because "this is the only way I'm going to get out of my charge." But these were matters of credibility for the jury.[2] We conclude that the trial evidence, even excluding an erroneously admitted audiotape purportedly depicting the December sale,[3] was sufficient for a reasonable trier of fact to find Brown guilty beyond a reasonable doubt of two counts of selling cocaine.[4]

2. Brown contends that the trial court erred in allowing the jury to hear the audiotapes of the drug transactions, arguing that the state failed to meet certain foundation requirements announced in *Steve M. Solomon, Jr., Inc. v. Edgar*.[5] Specifically, Brown argues that the state failed to show that the equipment operator was competent and that the audiotapes fairly and accurately depicted the cocaine sales.

The trial court did not abuse its discretion in determining that the operator of the recording device was competent.[6] McDonald testified that he had concealed a recorder on the CI's person on both dates. He identified State's Exhibits 2 and 11 as the audiotapes that he had placed on and removed from the recorder on the CI's person on November 14 and December 5, respectively. McDonald described the location of the recorder's power switch and testified that he had turned on the recorder before the CI left him to meet Brown. McDonald testified that, upon the CI's return to him, he turned off the

---

[2] Id.

[3] See Division 2, infra, finding the admission of that audiotape was error for insufficient authentication. See generally *Livingston v. State*, 268 Ga. 205, 212 (5) (486 SE2d 845) (1997) (considering the sufficiency of the evidence without inadmissible hearsay); *Phagan v. State*, 268 Ga. 272, 277 (3) (b) (486 SE2d 876) (1997) (when determining whether the evidence presented was sufficient to authorize a jury to conclude beyond a reasonable doubt that the defendant was guilty of the crime charged, evidence wrongfully admitted due to lack of authentication may be considered).

[4] See *Jackson v. Virginia*, supra; *Martin v. State*, 267 Ga. App. 28, 32 (3) (598 SE2d 828) (2004).

[5] 92 Ga. App. 207, 211 (3) (88 SE2d 167) (1955) (seven prerequisites for the admission of an audiotaped statement must be shown: (1) the mechanical device was capable of taking testimony; (2) the operator was competent; (3) the recording is authentic and correct; (4) no changes, additions, or deletions were made; (5) the manner of preservation; (6) identity of the speakers; and (7) the testimony was not elicited through duress).

[6] See *Whitehead v. State*, 258 Ga. App. 271, 274-275 (1) (d) (574 SE2d 351) (2002) (applying abuse of discretion standard of review in considering whether evidence was erroneously admitted for failure to establish foundation).

recorder, removed it from the CI's person, took the audiotapes out of the recorder, and punched certain tabs on the audiotapes to prevent subsequent erasing of and recording onto the audiotapes. Brown points to no evidence indicating that McDonald was not competent to operate the recorder. And "[t]he fact that the tapes exist at all is evidence that the tape recorder was functional and that [McDonald] knew how to operate it."[7]

We turn to whether the trial court abused its discretion in ruling that the state had established that these audiotapes fairly and accurately depicted the cocaine sales for which Brown has been convicted. Certainly, an audiotape can be authenticated by the testimony of one who was a party to the events recorded on the tapes.[8] But here, although the CI testified that the device containing the audiotapes had been concealed on his person during both drug sales, the state failed to elicit testimony from him that State's Exhibits 2 and 11 fairly and accurately depicted those sales. Brown elected not to testify. Based on the state's evidence as a whole, however, we conclude that the trial court did not abuse its discretion in determining that State's Exhibit 2 was sufficiently authenticated. We reach a contrary conclusion, however, regarding the trial court's determination concerning State's Exhibit 11.

*State's Exhibit 2.* McDonald testified that on November 14 and on December 5, he also concealed on the CI's person a body bug capable of instantaneously transmitting sounds. From the time the CI left McDonald to meet Brown until the time the CI returned to him, McDonald and other law enforcement drug agents assisting him collectively trailed the CI, maintaining surveillance on him. In addition, McDonald and these assisting officers monitored the conversations between the CI and Brown via the body bug.

Robert Shore was one such agent assisting McDonald on November 14. Having listened to the audiotape marked as State's Exhibit 2, Shore testified that Brown, the CI, and McDonald were speakers on that tape and that the audiotape was correct and had not been altered. Because the state's evidence additionally showed that Shore overheard the November 14, 2002 exchange between Brown and the CI via the body bug, the trial court did not abuse its discretion in finding State's Exhibit 2 adequately authenticated.[9]

---

[7] *Willett v. Russell M. Stookey, P.C.*, 256 Ga. App. 403, 409 (3) (568 SE2d 520) (2002).

[8] See *Hudson v. State*, 273 Ga. 124, 127 (3) (538 SE2d 751) (2000); *Phagan*, supra at 281 (5).

[9] See generally *Hudson*, supra (applying to audiotapes the law that a videotape is admissible where one who personally witnessed the events recorded testifies that the videotape accurately portrayed what the witness saw take place at the time the events occurred), citing *Phagan*, supra.

*State's Exhibit 11.* The state asserts, "[a] review of the testimony of Agents MacDonald [sic] and Shore clearly demonstrates that the tape recordings were properly conducted, authenticated and admissible at trial," but it cites no evidence supporting that assertion.[10] And we find none. The record reveals that, although Shore identified Brown, the CI, and McDonald as speakers on State's Exhibit 11, Shore testified that he had not participated in the December 5 operation and that he therefore had not heard the exchange between Brown and the CI on that date. While several other drug agents had monitored that exchange, the state failed to elicit testimony from any one of them that he or she had reviewed State's Exhibit 11 and that the audiotape depicted what he or she had heard via the body bug. Furthermore, while OCGA § 24-4-48 was in effect when appellant was tried, it could not have been the vehicle by which the audiotape was admitted into evidence because the essential criterion, the unavailability of an authenticating witness, was not met.[11]

The state's evidence fell short of showing that its Exhibit 11 was an authentic recordation of the December 5 sale of cocaine by Brown. Therefore, the trial court abused its discretion in admitting it. However, the trial court's error does not mandate reversal. The Supreme Court of Georgia has adopted the highly probable test when determining whether a nonconstitutional error was harmless.[12] If it is highly probable that the error did not contribute to the judgment, then the error is harmless.[13] Factors to be considered when applying this test include the strength of the evidence against the defendant and whether there was other evidence relating to the same issue.[14]

In this case, the state presented a strong case of direct and circumstantial evidence showing that Brown sold cocaine on December 5, 2002. McDonald testified that before the CI left to meet Brown that day, he fully searched the CI's person and vehicle for drugs and money, making sure that he had neither, except the $200 that he gave the CI for the anticipated drug transaction. McDonald and other law enforcement drug agents maintained surveillance on the CI from the time he left McDonald until he reunited with McDonald. They observed the CI meeting with Brown. McDonald testified that when the CI returned from meeting with Brown, the CI had cocaine, but no

---

[10] See Court of Appeals Rule 25 (b) (1) (appellee's brief shall point out any material inaccuracy or incompleteness of appellant's brief).

[11] *Phagan,* supra at 281 (5).

[12] See *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976); see also *Phagan,* supra at 282 (5) (applying highly probable test in determining whether erroneous admission of tape that was not properly authenticated constituted harmful error).

[13] *Johnson,* supra.

[14] Id.; *Owens v. State,* 248 Ga. 629, 631-632 (284 SE2d 408) (1981).

money. One of the drug agents who had assisted McDonald that day by participating in the surveillance and by monitoring the conversation between the CI and Brown testified that, after the CI left McDonald for his meeting with Brown, the CI had no opportunity to obtain cocaine from any source other than Brown. And the CI testified that when he met with Brown on December 5, Brown provided him with cocaine in exchange for $200. In addition, there was evidence that just weeks before December 5, Brown sold cocaine to the same CI in a similar manner.

The record shows that the evidence depicted by the erroneously admitted audiotape was cumulative of other evidence properly admitted. Considering further the strength of the evidence of Brown's guilt, we find it highly probable that the erroneous admission of State's Exhibit 11 did not contribute to the judgment.[15] Thus, no reversible error occurred.

3. Brown contends that the trial court erred by allowing the CI to testify. He points out that he had elected to invoke reciprocal discovery under Georgia's Criminal Procedure Discovery Act,[16] but the state did not disclose the CI's identity until the first day of trial. Brown claims that such short notice robbed him of adequate time to uncover possible discrediting facts about such a pertinent witness.

Brown concedes that the trial court allowed his trial counsel an opportunity to interview the CI before the CI testified, that his attorney did interview the CI, and that his attorney did not thereafter seek a continuance. "Generally a defendant has a duty to request a continuance to cure any prejudice which may have resulted from the State's failure to comply with the requirements of [Georgia's Criminal Procedure Discovery Act]."[17] Brown's failure to do so waived appellate review of this issue.[18]

4. Brown contends that the trial court erred in determining that he had not been deprived of effective assistance of counsel. He claims that his trial counsel should have requested a continuance after interviewing the CI because "some additional incriminating information about [the] CI probably could have been uncovered had there been more time."

To prove ineffectiveness of trial counsel, the defendant must show that his trial counsel's performance was deficient and that the deficient performance prejudiced him.[19] In considering a claim of

---

[15] See *Owens*, supra; *Brown*, supra; *Shaw v. State*, 247 Ga. App. 867, 873 (4) (545 SE2d 399) (2001); compare *Phagan*, supra at 281-282.
[16] OCGA § 17-16-1 et seq.
[17] *State v. Dickerson*, 273 Ga. 408, 411 (2) (542 SE2d 487) (2001) (citations omitted).
[18] See id.
[19] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

ineffectiveness of trial counsel, a court is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one.[20] In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to that court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo.[21]

Brown has failed to show prejudice with regard to his ineffectiveness claim because he merely speculates what further investigation concerning the CI might have uncovered. He has not shown what additional information would have revealed and how such revelations would have changed the outcome of his case. Brown's bare speculation fails to make the requisite showing to find reversible error.[22]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JULY 11, 2005 —

*Paul K. Cook*, for appellant.
Willie J. Brown, *pro se.*
*Steven Askew, District Attorney, David C. Walker, Mary K. Mitchell, Assistant District Attorneys*, for appellee.

---

[20] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).
[21] *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).
[22] See *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).